UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SHAWN MELLINGER,                )
        Plaintiff,              )
                                )
          v.                    )   Civil Action No. 1:13cv1431
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of         )
Social Security,               )
        Defendant.             )

REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Shawn Mellinger

("plaintiff") seeks judicial review of the final decision of the

Commissioner of Social Security ("defendant") denying

plaintiff's claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434, 1381-

1383.  Both parties filed motions for summary judgment (Dkts. 12

and 19) with briefs in support (Dkts. 13 ("Pl.'s Mem. Supp.")

and 20 ("Def.'s Mem. Supp.")), which are now ready for

resolution.  For the following reasons, the undersigned

recommends that plaintiff's Motion for Summary Judgment (Dkt.

12) be DENIED, and that defendant's Motion for Summary Judgment

(Dkt. 19) be GRANTED.

I.   PROCEEDURAL BACKGROUND

Plaintiff filed his DIB and SSI applications on March 9 and

10, 2011, respectively, alleging disability as of December 23,

1

2010.  (Administrative Record[1] ("R.") 159-213.)  Plaintiff

subsequently amended his alleged onset date to August 9, 2011,

after acknowledging at his hearing on June 27, 2012, that he

worked as a pipefitter until August 9, 2011.  (R. 45-46.)

Plaintiff's claims were initially denied on May 31, 2011, and

again upon reconsideration on August 3, 2011.  (Id. at 116-28,

131-44.)  Plaintiff requested a hearing in front of an

Administrative Law Judge ("ALJ") on August 31, 2011.  (Id. at

145.)

     ALJ C. J. Sturek held a hearing on June 27, 2012, during

which he received testimony from plaintiff, represented by

counsel, and Annie Huebecker, an impartial vocational expert

("VE").  (Id. at 35-69.)  On August 24, 2012, the ALJ issued his

decision finding that plaintiff was not disabled under Sections

216(i) and 223(d) of the Social Security Act from August 9,

2011, through the date of his decision.  (Id. at 13, 16-28.)

The Appeals Council for the Office of Disability and

Adjudication ("Appeals Council") denied plaintiff's request for

review of the ALJ's decision on September 16, 2013.  (Id. at 1-

5.)  Having exhausted his administrative remedies, plaintiff

filed a Complaint for judicial review on November 20, 2013.

(Dkt. 1.)  Defendant answered on February 11, 2014 (Dkt. 8), and

_____

[1] The certified administrative record was filed under seal on
February 11, 2014, pursuant to Local Civil Rules 5(B) and
7(C)(1).  (Dkt. 9.)

the parties filed cross-motions for summary judgment.  (Dkts. 12 and 19.)  The matter is now ripe for adjudication.

## II.  STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance.  Hays, 907 F.2d at 1456.  While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d at 589 (4th Cir. 1996)).  The correct law to be

3

applied includes the Act, its implementing regulations, and controlling case law.  Coffman, 829 F.2d at 517-18.  Moreover, the Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.  Hays, 907 F.2d at 1456-57.  With this standard in mind, the Court next evaluates the ALJ's findings and decision.

### III. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility.  The Court examines this five-step process on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Acting Commissioner is supported by substantial evidence in the record.  20 C.F.R. §§ 404.1520 and 416.920.  In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

First, plaintiff has not engaged in substantial gainful activity ("SGA") since August 9, 2011, the amended alleged onset date.  (R. 19.)  Second, plaintiff has the following severe impairments: residuals of cervical discectomy, residuals of lumbar discectomy, atrial fibrillation, and shoulder disorder. (Id.)  Third, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically

4

equals the severity of the one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)  Fourth,

plaintiff has the residual function capacity ("RFC") to perform

light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b), and sedentary work as defined in 20 C.F.R. §§

404.1567(a) and 416.967(a), with the additional limitations of

> [H]aving the ability to walk or stand for two hours in
> an eight-hour workday; walk for only one to two blocks
> at a time; and needs a sit/stand option, defined as
> the ability to sit and/or stand at intervals of
> approximately one hour.  In addition, the claimant has
> a limitation with pushing and pulling that would
> affect his dominant upper extremity and both lower
> extremities, and any work activity requiring a force
> greater than 10 pounds would preclude the activity.
> Further, the claimant is limited to unskilled work;
> cannot climb ladders, ropes or scaffolds, crawl or
> kneel; can occasionally climb stairs or ramps,
> balance, bend, stoop, crouch, and squat; and must
> avoid concentrated exposure to hazards, such as moving
> machinery or unprotected heights.  He is unable to do
> overhead reaching with his dominant upper extremity,
> and can only occasionally perform overhead reaching
> with his nondominant upper extremity.  The claimant
> can also occasionally perform gripping activity with
> his dominant upper extremity.  Due to pain and
> medication, the claimant's productivity would be
> reduced, but he would be productive more than 85
> percent of the time.

(Id. at 21.)  Fifth, while plaintiff is unable to perform any

past relevant work, there are jobs that exist in significant

numbers in the national economy that plaintiff can perform.

(Id. at 26.)  Therefore, the ALJ determined that plaintiff has

not been under a disability, as defined in the Social Security

Act, from August 9, 2011, through August 24, 2012, the date of

the ALJ's decision.  (Id. at 27-28.)

## IV.  RELEVANT FACTUAL BACKGROUND

Plaintiff was 45 years old when he testified before the ALJ.  (R. 39.)  Plaintiff has a high school education, was trained as a pipefitter, and worked for over 20 years as a pipefitter in both union and non-union capacities.  (Id. at 42-43.)  Plaintiff initially alleged a disability onset date of December 23, 2010, but subsequently amended his alleged onset date to August 9, 2011, after admitting at the administrative hearing that he worked as a pipefitter until August 9, 2011. (Id. at 45-46, 195-213.)

At the hearing before the ALJ held on June 27, 2012, plaintiff testified that he previously underwent surgery on his cervical spine, lumbar spine, and right shoulder.  (Id. at 50.) Plaintiff takes medication for his atrial fibrillation, and treats his pain with Percocet, Lyrica, and a narcotic patch that provides "instant relief" lasting for four to six hours.  (Id. at 52-53.)  He testified that he can lift twenty pounds, walk a couple blocks with the aid of a cane, help his wife grocery shop, perform water aerobics, train his dog, attend church, and pay attention for at least one hour.  (Id. at 54-60.)  Plaintiff sometimes experiences numbness and tingling in his hands and fingers, but can hold utensils, shave, brush his teeth, grip objects, and sense hot and cold.  (Id. at 55-56.)  Plaintiff

6

also testified that he needs to lay down four to five times a day.  (<u>Id.</u> at 62.)

The medical records show that plaintiff had an anterior cervical discectomy with fusion and plating in January 2011, after being treated by Charles Azzam, M.D. for severe neck pain. (<u>Id.</u> at 420-26.)  Plaintiff reported that this surgery relieved his neck and shoulder pain, and a subsequent MRI in March 2011 confirmed improvement.  (<u>Id.</u> at 419, 447.)  Plaintiff underwent lumber spine surgery in August 2011, and right shoulder arthroscopy to repair a rotator cuff tear in December 2011. (<u>Id.</u> at 464, 733.)  During 2012, plaintiff consistently stated that his pain only moderately limited his activities, and neurological examinations showed normal sensations, no atrophy, and normal reflexes.  (<u>Id.</u> at 740-49, 812.)

The ALJ, noting that "all medical opinions of record were evaluated and assigned weight," determined that the "objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (<u>Id.</u> at 24.)  He further found that plaintiff's "activities reveal a significantly greater physical and mental functional capacity than alleged."  (<u>Id.</u> at 22-24.)

At the administrative hearing, the VE testified that an individual with plaintiff's RFC could perform the requirements of representative unskilled, sedentary occupations such as

surveillance system monitor and document preparer.  (Id. at 63-
67.)  The VE also found that plaintiff could perform unskilled,
light occupations such as counter clerk and router.  (Id.)

V.    ANALYSIS

Plaintiff raises two issues on review.  First, he argues
that the ALJ did not assign adequate weight to a physical
therapist's opinion, plaintiff's testimony, and various other
evidence.  Second, plaintiff claims that the ALJ erred in his
credibility determination.  Each argument is addressed in turn.

A. Substantial Evidence Supports the ALJ's RFC Evaluation

Plaintiff first argues that the ALJ erred in his RFC
determination.  He claims that the ALJ did not afford sufficient
deference to a physical therapist's Functional Capacity
Evaluation ("FCE") and other evidence that allegedly
contradicted the ALJ's RFC evaluation.  (Pl.'s Mem. Supp. 2-13.)
Defendant, meanwhile, argues that substantial evidence supports
the ALJ's decision.  (Def.'s Mem. Supp. 12-16.)

Residual functional capacity is generally defined as the
most that an individual is able to do despite limitations caused
by his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.
Social Security Ruling ("S.S.R.") 96-8p states that

> Ordinarily, RFC is an assessment of an individual's
> ability to do sustained work-related physical and
> mental activities in a work setting on a regular and
> continuing basis.  A 'regular and continuing basis'
> means 8 hours a day, for 5 days a week, or an

8

equivalent work schedule.

S.S.R. 96-8p.  To determine RFC, "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id.  The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id.  The final responsibility for determining a claimant's RFC is reserved to the ALJ, who must provide an adequate explanation to support the restrictions contained in the RFC assessment.  20 C.F.R. §§ 404.1545(a), 416.945(a); Flaming v. Barnhart, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003).

Here, the ALJ found that plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitations of

> [H]aving the ability to walk or stand for two hours in an eight-hour workday; walk for only one to two blocks at a time; and needs a sit/stand option, defined as the ability to sit and/or stand at intervals of approximately one hour.  In addition, the claimant has a limitation with pushing and pulling that would affect his dominant upper extremity and both lower extremities, and any work activity requiring a force

greater than 10 pounds would preclude the activity. Further, the claimant is limited to unskilled work; cannot climb ladders, ropes or scaffolds, crawl or kneel; can occasionally climb stairs or ramps, balance, bend, stoop, crouch, and squat; and must avoid concentrated exposure to hazards, such as moving machinery or unprotected heights. He is unable to do overhead reaching with his dominant upper extremity, and can only occasionally perform overhead reaching with his nondominant upper extremity. The claimant can also occasionally perform gripping activity with his dominant upper extremity. Due to pain and medication, the claimant's productivity would be reduced, but he would be productive more than 85 percent of the time.

(Id. at 21.)

In reaching this conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id. at 21.) Pursuant to S.S.R. 96-8p, the ALJ provided a narrative discussion of how the evidence supported his findings, with a review of supporting medical facts including:

- plaintiff's history of "spinal impairments" and "cervical and lumbar back problems," which necessitate "the sedentary to limited light exertional capacity, with restrictions affecting his walking/standing, pushing/pulling, postural movements, and exposure to hazards" in addition to a "sit/stand option";

- records from Charles J. Azzam, M.D., a neurosurgeon,

10

documenting plaintiff's January 2011 cervical spine
surgery, as well as a subsequent MRI "confirm[ing]
[plaintiff's] improvement";

- documents showing a normal sensory examination, "no
  atrophy, fasciculation or pronator drift," a "full range of
  motion and strength in his lower extremities, at 5/5,"
  "normal and full strength and tone, at 5/5," and "deep
  tendon reflexes [that] are symmetric bilaterally"; and,

- medical records detailing plaintiff's "right shoulder
  disorder," including a right shoulder impingement, a right
  shoulder rotator cuff tear, and degenerative joint disease
  at the acromioclavicular joint of the right shoulder,
  "which would limit the use of his upper extremities and
  ability to climb and crawl," as well as plaintiff's "most
  recent examination with his treating orthopedic surgeon,
  [which showed] full range of motion in his shoulders, and
  full strength and tone at 5/5."

(Id. at 21-24.)

Similarly, the ALJ analyzed and discussed supporting
nonmedical evidence including but not limited to:

- plaintiff's self-described daily activities, which included
  "doing laundry, folding clothing, helping cook dinner,
  pay[ing] bills, using a checkbook/money order, watching
  television, reading, attending church, and walking his

dog," as well as "car[ing] for young children at home, and tak[ing] them to their bus stop";

- plaintiff's claims that he "needs to lay down four to five times a day, gets injections, and takes pain medication, including Percocet and Lyrica," which "makes him drowsy, causes frequent urination, and gives him a dry mouth"; and,

- testimony that plaintiff "can walk a couple of city blocks before resting; can lift 20 pounds; can sit for 20 to 25 minutes; can stand/walk for one hour; and still has sufficient grip strength to shave, brush his teeth, hold a pen, and hold an eating utensil."

(Id. at 22-23.)

Additionally, the ALJ considered the opinion of Renee Trombley, a physical therapist who completed a FCE for plaintiff in December 2011. (Id. at 26, 711-25.) Despite acknowledging that Ms. Trombley failed to qualify as an "acceptable medical source," the ALJ gave "great weight" to her opinion that plaintiff "is not able to return to his past work as a pipe fitter because he cannot meet the physical requirements of the work." (Id. at 26.) Accordingly, the ALJ found that plaintiff is unable to perform his past relevant work. (Id. at 26.)

Plaintiff claims that while the ALJ "ostensibly gave . . . great weight" to Ms. Trombley's FCE opinion as a "treating

source," he "failed to account for several significant work-related limitations set forth in that opinion." (Pl.'s Mem. Supp. 3-5.) For example, plaintiff claims that the ALJ erred in failing to account for Ms. Trombley's conclusion that plaintiff "was only able to walk at a speed of 0.5 mph and had to stop when he reached a distance of just 0.1 miles" and "needed to change positions every few minutes." (Id. at 4.) Plaintiff argues that "[t]hese errors can only be corrected by a remand for further proceedings." (Id. at 5.)

Plaintiff's argument is unpersuasive for at least two reasons. First, plaintiff is mistaken about Ms. Trombley's status as an alleged "treating source." As the ALJ correctly noted from the outset, Ms. Trombley is not qualified to "provide evidence to establish an impairment," "give [a] medical opinion", or be "considered [a] treating source" because she is not a licensed physician, qualified pathologist, or other "acceptable medical source."[2] 20 C.F.R. §§ 404.1513(a) and 416.913(a). Rather, Ms. Trombley is a physical therapist, and hence qualifies as an "other source" whose opinion cannot be

---

[2] Pursuant to S.S.R. 06-03P, "acceptable medical sources" include (1) licensed physicians (medical or osteopathic doctors); (2) licensed or certified psychologists; (3) licensed optometrists, "for the measurement of visual acuity and visual fields"; (4) licensed podiatrists, "for purposes of establishing impairments of the foot, or foot and ankle only"; and, (5) qualified speech-language pathologists.

afforded controlling weight.  Id.  Instead, her opinion is only given weight to the extent that it is supported by various factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), including the treatment provided, the extent of the examinations and testing performed, and the degree of explanation provided with that opinion.  S.S.R. 06-03p.  Therefore, because Ms. Trombley was not an "acceptable medical source," the ALJ was neither required nor authorized to give Ms. Trombley's opinion the weight of a "treating source."

Second, plaintiff does not show how the ALJ failed to adequately account for Ms. Trombley's opinion or other evidence in the record.  As discussed supra, the ALJ reviewed ample medical and nonmedical facts and incorporated these findings into his determination of plaintiff's RFC.  Many of these limitations are squarely supported by Ms. Trombley's opinions. For example, despite plaintiff's arguments that the ALJ did not adequately consider plaintiff's walking limitations (Pl.'s Mem. Supp. 4), the ALJ limited plaintiff to "walk[ing] or stand[ing] for two hours in an eight-hour workday" and "walk[ing] for only one to two blocks at a time."  (R. 21.)  Similarly, notwithstanding plaintiff's argument that the ALJ did not address a sit/stand option (Pl.'s Mem. Supp. 4-5), the ALJ's RFC determination included a "sit/stand option, defined as the

ability to sit and/or stand at intervals of approximately one
hour." (R. 21.) Also contrary to plaintiff's arguments (Pl.'s
Mem. Supp. 3-5), the ALJ accounted for Ms. Trombley's opinions
regarding plaintiff's stooping and lifting/carrying limitations
by restricting him to only occasional bending and to light and
sedentary work, and, in accordance with Ms. Trombley's ultimate
conclusion, found that plaintiff cannot perform any past
relevant work. (R. 21, 26.)

Finally, plaintiff appears to take issue with the ALJ's
treatment of the opinion of Ms. Deborah Williams, a nurse that
provided occasional treatment since March 15, 2010. (Pl.'s Mem.
Supp. 6-7.) Plaintiff specifically claims that "Ms. Williams
advised that plaintiff's symptoms . . . are frequently severe
enough to interfere with attention and concentration," and that
her opinion regarding plaintiff's walking limitation was
"entirely consistent with [plaintiff's] testimony and the
results of the above-described FCE." (Id. at 6.) However,
plaintiff does not directly challenge the ALJ's assessment of
Ms. Williams's opinion or otherwise elaborate on his argument
regarding this point. Regardless, the ALJ clarified that he
only gave "[t]his opinion partial weight," because (1) "the
objective clinical signs mentioned by Nurse Williams are not
supported by [plaintiff's] recent examinations," (2) plaintiff's

"testimony reflects far greater physical capabilities," and (3) "Nurse Williams is not an 'acceptable medical source' under 20 C.F.R. §§ 404.913(a) and 416.913(a), and her opinion is, therefore, not entitled to the weight of a 'medical' opinion." (R. 26.)  Thus, plaintiff's contentions, if any, regarding the ALJ's treatment of Ms. Williams' opinion are unfounded because the ALJ adequately explained the weight assigned to her opinion and his reasons for treating it as such.

In sum, substantial evidence supports the ALJ's RFC determination, which adequately accounts for limitations detailed by Ms. Trombley and other sources in the record.  The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "considered opinion evidence" in accordance with the requirements of 20 C.F.R. §§ 404.1527, 404.1529, 416.927, and 416.929, and S.S.R. 96-2p, 96-6p, and 06-3p.  Therefore, the undersigned finds that substantial evidence supports the ALJ's finding that, considering plaintiff's RFC, he was not disabled from his amended alleged onset date through the date of the decision.

B. Substantial Evidence Supports the ALJ's Credibility Finding

Plaintiff next argues that the ALJ's credibility determination was flawed because he "failed altogether to

16

consider Mr. Mellinger's 26 consecutive year work history before finding his testimony not credible." (Def.'s Mem. Supp. Mot. Summ. J. 13.) Plaintiff contends that the Agency's regulations require the ALJ to "consider an excellent work history as part of the credibility assessment," as "it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits." (Id. at 14.)

Where the ALJ makes a determination regarding a claimant's credibility, the ALJ must adequately explain the reasons for the finding about the credibility of the individual's statements in the disability determination or decision. S.S.R. 96-7p. If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (holding that the court is not to "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency). A lack of supportive evidence may directly undermine a claimant's credibility. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (stating that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly

17

probative of the claimant's credibility"). This Court must accept the ALJ's credibility determination unless it is "unreasonable, contradicts other findings of fact, or is based on an inadequate or no reason at all." Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).

Here, the ALJ adequately explained the reasons for finding that plaintiff's testimony concerning his disability allegations was not credible. (R. 22.) The ALJ discussed plaintiff's medical history, noted that his medical providers controlled his symptoms, and heard plaintiff testify that his pain medication provided "instant relief" lasting four to six hours. (Id. at 23-24, 53.) Additionally, the ALJ found that plaintiff's daily activities contradicted his allegations of disability. (Id. at 23-24.) The ALJ explained that

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record, the claimant has reported that he can perform a variety of tasks, including doing laundry, folding clothing, helping cook dinner, pay bills, using a checkbook/money order, watching television, reading, attending church, and walking his dog. The claimant is apparently also able to care for young children at home, and take them to their bus stop, which could be physically demanding. In addition, the claimant indicated that he is able to drive, and will occasionally visit his mother in a nursing home.
>
> These activities reveal a significantly greater physical and mental functional capacity than alleged. It appears that, despite his impairments, the claimant has engaged in a somewhat normal level of daily

> activity and interactions.  The physical and mental
> capabilities requisite to performing many of the tasks
> described above, as well as the social interactions,
> replicate those necessary for obtaining and
> maintaining employment.

(Id. (internal citations omitted)).  Therefore, the ALJ held

that "the objective findings in this case fail to provide strong

support for the claimant's allegations of disabling symptoms and

limitations," and that the "medical findings do not support the

existence of limitations greater than the above-listed residual

functional capacity."  (Id. at 22-24.)

Furthermore, plaintiff fails to show how his work history

could in any way assuage the ALJ's well-grounded concerns about

plaintiff's credibility.  In fact, plaintiff's work history may

actually corroborate the ALJ's credibility determination.

Despite initially alleging a disability onset date of December

23, 2010, plaintiff returned to work as a pipefitter on April

28, 2011, and continued working in that capacity until August 9,

2011.  (R. 45-46, 267.)  Thus, though he claimed to be disabled

during that time, plaintiff stood, walked, and bent eight hours

a day and could lift up to 200 pounds, all without any special

work conditions or assistance.  (Id. at 267, 270.)  This

inconsistency further shows grave problems with plaintiff's

credibility, and in no way is a "factor enhancing [plaintiff's]

credibility" as alleged by plaintiff.  (Pl. Mem. Supp. 14.)

The ALJ provided a thorough and substantial review of his reasons to believe that plaintiff's testimony regarding his disabling symptoms and limitations was not credible.  As it is not this Court's role to undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment in the face of substantial evidence to support the ALJ's decision, there is no basis for this Court to revisit the ALJ's credibility determination.

## VI.   RECOMMENDATION

For the reasons set forth, the undersigned Magistrate Judge recommends a finding that the ALJ's decision is supported by substantial evidence and does not contain legal error. Therefore, the undersigned recommends that plaintiff's Motion for Summary Judgment (Dkt. 12) be DENIED and defendant's Motion for Summary Judgment (Dkt. 19) be GRANTED.

## VII.  <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.


/s/
_____
THERESA  CARROLL  BUCHANAN
UNITED  STATES  MAGISTRATE  JUDGE

July 8, 2014
Alexandria, Virginia